**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO.  20-CR-30066-SMY |
| | ) | |
| SEAN P. VAN HORN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S TRIAL MEMORANDUM**

The United States of America, by its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois, and Karelia S. Rajagopal, Assistant United States Attorney, provides the Court with the Government's Trial Memorandum. The defendant, Sean P. Van Horn is charged in a one Count indictment with Attempted Enticement of a Minor.  Trial in this matter is scheduled to begin on August 9, 2021.

**I. Summary of Anticipated Facts and Government Exhibits**

**A.    Craigslist Advertisement**

On April 16, 2020, FBI Agent Brian Wainscott posted an advertisement on Craigslist. The advertisement stated:

"Looking for Like Minded, In[ee$$$T."

A screenshot of this advertisement is attached as Attachment A.

This advertisement is relevant because VAN HORN responded to it and it demonstrates how this case began.  It is non-hearsay because the government is not offering the statement for its truth.

**B.    Chats**

Thereafter, the defendant VAN HORN initiated a conversation with Agent Wainscott. Agent Wainscott pretended to be a father, named Brian, with the profile name "Brionica James",

who was interested in "sharing" his 10-year-old daughter for sexual activity with VAN HORN.

The conversations took place through a Craigslist internal email messages. The following are the

beginning conversations between VAN HORN and Agent Wainscott (hereinafter "UCE") [1]:

> **Van Horn**: What ages?
> **UCE**: Active 10 yo
> **Van Horn**: Amazing... boy or girl?
> **Van Horn**: Tell me your situation Any pics or video to share?
> **UCE**: Girl. Pics of? It first happened in the shower. She was curious and I explained and more questions led to showing.
> **Van Horn**: That sounds beautiful and so ideal. How long ago did all that start? I guess she's an eager, curious, willing participant? That's the only right way for that to happen. Are you male or female? It's hot either way but there's something super hot about pedo-moms I was asking about pics of her or the two of you together. I'd love to meet you both sometime.
> **Van Horn**: Is she your granddaughter, daughter, step-daughter, niece, cousin, or sister?
> **UCE**: Daughter, absolutely willing participant I wouldnt force her. What do yo0u want in the pics?
> **Van Horn**: Good to know she's not forced, the true beauty of it comes from her curiosity and willingness. I'm not looking for anything in particular pic wise. Didn't know if you had any pics and if you did if you wanted to share them. I'd be happy to look at any pics or videos you send me and keep them VERY private. So are you her mother or her father?
> **UCE**: Proud pappa

VAN HORN and UCE continued to have discussions by email. VAN HORN asked for a

picture of the UCE'S 10 year-old daughter UCE sent back an image of a fully clothed child (not

an actual child). VAN HORN responded that he was sexually attracted to the child and shared that

he has a fantasy of "at a minimum" performing oral sex on the child and making her orgasm

multiple times. VAN HORN also sends a "selfie" photo of himself.

UCE and VAN HORN continue to have a conversation about their respective locations,

the possibility of meeting up and what VAN HORN wanted to do to UCE's 10 year-old daughter.

VAN HORN wrote that he wanted to have vaginal intercourse with "Kimi" while UCE watched

and masturbated.

---

[1] All cited email exchanges are verbatim except for emoticons being removed.

VAN HORN asked UCE to send nude images of the UCE's 10-year-old daughter. UCE emailed VAN HORN a file purported to contain child pornography. The file was a downloadable image that appeared to show an error occurred during the download. The conversation then continued with VAN HORN trying to coordinate with the UCE to meet before asking more about the UCE's daughter. VAN HORN repeatedly asks for UCE to send additional nude photos of the child. Eventually, the conversation turned to the best day and time for the two to meet for the purpose of VAN HORN having sex with UCE's daughter. The following is the conversation that took place on May 25, 2020:

> **Van Horn**: Hey Brian What do you two have going on this evening?
> **UCE:** You willing to meet us in Mt. Vernon. We are getting our families cabin ready for the weekend?
> **Van Horn**: I really wish I could but Mt. Vernon's not gonna work for me
> UCE: Dang that sucks
> **Van Horn**: I know I can't wait to slide your daughter's panties down her thighs then spread her butt cheeks and see if she likes having my tongue inside her

UCE and Van Horn continued the email conversation and agreed to meet on May 28, 2020 in O'Fallon, Illinois. The following conversation took place on May 28, 2020:

> **UCE**: Morning still wanna meet later?
> **Van Horn**: Sure
> **UCE**: Ok i can leave work around 12
> **Van Horn**: Where did you want to meet?
> **UCE**: Near Menards
> **UCE**: Subway by buffalo wild wings?
> **Van Horn**: Sure I can head that way.
> **UCE**: Cool me too
> **UCE**: Couple min away
> **Van Horn**: What are you driving
> UCE: Purple Chevy Cruz
> UCE: You?
> **Van Horn**: I'm getting spooked and paranoid. My ex wife's cousin is doing 30 for cp.

The entirety of these chats is attached as Attachment B. These chats are admissible as Van Horn's admissions under Fed. R. Evid. 801. The foundation that the chats were authored by Van Horn are his later admissions stating that he communicated with the UCE.   To the extent those

items also contain statements of Agent Wainscott, posing as Brian, those portions are admissible because they are not being offered for their truth but to provide context for Van Horn's admissions. *See United States v. Davis*, 890 F.2d 1373 (7th Cir. 1989); *United States v. Zizzo,* 120 F.3d 1338 (7th Cir. 1997); *United States v. Norton*, 893 F.3d 464 (7th Cir. 2018).

After admitting the chats, the Government will then seek to introduce a chronological compilation of those chats.  That exhibit is admissible because it is relevant, there is an adequate foundation for the exhibit, and it will aid the jury's understanding of the data contained in chats. An example of the chronological compilation is as follows:


**Thursday, April 16, 2020**

> **Sean Van Horn [11:38 p.m.]**
> What ages?

> **Brionica James [11:56 p.m.]**
> Active 10 yo

**Friday April 17, 2020**
> **Sean Van Horn [12:00 a.m.]**
> Amazing… boy or girl?

> **Sean Van Horn [12:15 a.m.]**
> Tell me your situation 😊 Any pics or video to share?


## C.    Defendant's arrest and statements

After UCE and Van Horn agreed to meet on May 28, 2020 in O'Fallon, Illinois, the FBI conducted surveillance in the vicinity of Subway: 1222 Central Park Dr Suite 106, O'Fallon, Illinois. VAN HORN notified UCE that he was sitting in a parking lot across the street watching the Subway. Surveillance observed a beige Ford van parked in the location where VAN HORN indicated he was parked. The beige Ford van then repositioned and parked in a parking lot

adjoining the Subway. VAN HORN was approached by agents and was asked to consent to an interview, to which he agreed.

### 1.    Van Horn's recorded interview and transcript

VAN HORN was interviewed in an FBI vehicle. VAN HORN sat in the front passenger seat and was not restrained. The interview was audio-recorded. Prior to being asked any questions, VAN HORN was read his constitutional advice of rights, to which he acknowledged that he understood those rights and agreed to answer agents' questions.  VAN HORN stated that he met a man named "Brian" on an online hook up advertisement site. VAN HORN and "Brian" emailed about VAN HORN having sex with "Brian's" 10-year-old daughter. VAN HORN said he was going to meet "Brian" and talk about having sex with his daughter. VAN HORN said he wanted naked pictures of "Brian's" 10 year-old daughter to masturbate to. VAN HORN said young girls from ages 10 to 18 excited him and gave him sexual gratification.  VAN HORN said he communicated with "Brian" using his cellphone but had deleted some of the communications. VAN HORN still had the last two days of emails, which were sent through his Gmail account, on his phone. VAN HORN said he was the one who sent all of the communications to "Brian" and was the only person who had access to his cellphone.

The government may introduce these admissions either by seeking admission of the entire taped interview or through the testimony of agent Wainscott. The inculpatory portions of Van Horn's statement are admissible because they are admissions of a party opponent under Fed. R. Evid. 801.[2]

The Government will introduce transcripts of the recording at the time it is played. The

---

[2] If the Government chooses not to play the recording of the interview, the defense may want to also elicit additional statements contained in that interview which he believes are exculpatory. Those statements are, however, inadmissible hearsay. Fed. R. Evid. 801; *United States v. Williamson*, 512 U.S. 594, 600 (1994). *See also United States v. Reese*, 666 F. 3d 1007, 1018-19 (citing *United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) (noting that the defendants' statements, to the extent they were exculpatory, would not have been admissible at trial because the statements were hearsay)).  Furthermore, such statements are not rendered admissible by the "rule of completeness" embodied in Fed. R. Evid. 106. *See Reese* 666 F.3d at 1019.

transcripts of this recording are admissible as an aid to the jurors. This District has routinely allowed the use of written transcripts to serve as an aid to jurors during a trial. Moreover, district courts may permit the use of transcripts during jury deliberations. *United States v. Cruz-Rea*, 626 F.3d 929, 936 (7th Cir. 2010). Additionally, the names of the alleged speakers may be printed on the transcripts if a person familiar with the voices testified as to the identity of the speakers. *Id.* These transcripts have already been provided to Mr. Cronin.

### 2.    Van Horn's recorded conversation with his girlfriend and transcript

While in the FBI vehicle, Van Horn also made a recorded call to his girlfriend. VAN HORN made this call on speaker phone, in the presence of agents. VAN HORN told his girlfriend, *inter alia,* "I got in trouble, I was doing something I shouldn't have been doing, I don't know exactly what the charge is going to be, but I've gotta take full responsibility for it." VAN HORN continued to tell his girlfriend about his conduct on Craigslist, stating he was "curious about a post someone put on there about incest." The government may introduce these admissions either by seeking admission of the entire recording or through testimony of agent Wainscott or agent Hart (both agents were present in the vehicle at the time of the call). The inculpatory portions of VAN HORN's statement are admissible for the Government because they are admissions of a party opponent under Fed. R. Evid. 801.[3] Further, the Government will introduce transcripts of the recording at the time it is played. The transcripts of this recording are admissible as an aid to the jurors.

---

[3] If the Government chooses not to play the recording of the interview, the defense may want to also elicit additional statements contained in that interview which he believes are exculpatory. Those statements are, however, inadmissible hearsay. Fed. R. Evid. 801; *United States v. Williamson*, 512 U.S. 594, 600 (1994). *See also United States v. Reese*, 666 F. 3d 1007, 1018-19 (citing *United States v. Davenport*, 929 F.2d 1169, 1175 (7th Cir. 1991) (noting that the defendants' statements, to the extent they were exculpatory, would not have been admissible at trial because the statements were hearsay)).  Furthermore, such statements are not rendered admissible by the "rule of completeness" embodied in Fed. R. Evid. 106. *See Reese* 666 F.3d at 1019.

## II. Legal Issues

### A. Elements of the Charged Offenses

VAN HORN is charged in Count 1 with attempting to commit the offense of enticement of a minor. Any "attempted" offense requires the government to prove that a defendant took a substantial step toward the completion of the completed offense. *See* 7th Cir. Pattern Criminal Jury Instruction 4.09 (2020). The offense of attempted enticement of a minor requires the government to prove that the defendant:

> (1) used a facility or means of interstate commerce to knowingly attempt to persuade, induce, entice or coerce an individual to engage in sexual activity; (2) the defendant believed that the individual was less than 18 years of age; (3) if the suggested sexual activity had occurred, the defendant would have committed the criminal offense of Aggravated Criminal Sexual Abuse under Illinois law; and (4) the defendant took a substantial step toward committing the crime of attempted enticement of a minor.

### B.    Recurring Legal Issues in Enticement/Encouragement Cases

There are recurring legal issues that arise in enticement/encouragement cases. Under Seventh Circuit precedent, the proper analysis of those legal issues renders many areas of evidence and facts irrelevant. Depending on the specific evidence and arguments presented in a particular case, those legal issues may not be adequately addressed in the 7th Circuit's Criminal Pattern Jury instructions.

### 1.    The Government's Theory of its Case and Applicable Law

It is important to recognize that the gravamen of the offenses ***is the encouragement and obtaining of a minor's agreement to engage in sexual activity*** and not any actual intent to engage in sexual activity. *United States v. Berg*, 640 F.3d 239, 246, 251-253 (7th Cir. 2011). ("Because Berg was charged with a § 2422(b) attempt, the government's burden was to prove beyond a reasonable doubt that he intended to persuade, induce, or entice someone whom he believed was a minor to engage in sexual activity—not that he intended to engage in sexual activity"); *United States v. Lee*, 603 F.3d 904, 914 (11th Cir. 2010) ("[w]ith regard to conduct, the government must

prove that the defendant took a substantial step toward causing assent, not toward causing actual

sexual contact"), *accord United States v. Goetzke*, 494 F.3d 1231, 1236 (9th Cir. 2007).

Furthermore, impossibility is not a defense to attempted violations of the

encouragement/enticement statutes and the fact that the individual whose assent the defendant

obtained was a government agent pretending to be a minor is no defense to an attempted

enticement/encouragement charge. *See Calilap v. Gonzales,* 137 F. App'x 912, 916 (7th Cir. 2005),

citing with approval, *United States v. Farner*, 251 F.3d 510, 5123 (5th Cir.2001) (impossibility

because "minor" was really adult federal agent posing as a minor on the internet did not relieve

defendant of criminal liability). *See also United States v. Nagel*, 559 F.3d 756, 764 (7th Cir. 2009)

("The type of crime defendant pled guilty to (attempted enticement of a minor to engage in sexual

activity) does not require an actual minor victim but, rather, only that the defendant believed the

victim was a minor."); *United States v. Mannava*, 656 F.3d 412, 416 (7th Cir. 2009) ("But whether

one is actually dealing with a child or an adult is irrelevant to attempt, given that impossibility is

not a defense to the attempt."); *United States v. Cote'*, 504 F.3d 682, 687 (7th Cir. 2007) ("[F]actual

impossibility or mistake of is not a defense to an attempt charge").

Thus, in order to meet its burden in this case, the government must prove that VAN HORN

intended to cause a person he believed to be a minor ***to assent or agree to engage in the criminal***

***offense of Aggravated Criminal Sexual Abuse*** under Illinois law, *Berg,* 640 F.3d at 246. The

government is not required to prove that VAN HORN intended to actually engage in illegal sexual

activity with that person.   Thus, § 2422(b) "criminalizes an intentional attempt to achieve

a *mental* state—a minor's assent—regardless of the accused's intentions vis-à-vis the actual

consummation of sexual activities with the minor."  *Id.* at 252. Simply put, the statute targets the

sexual grooming of minors as well as the actual sexual exploitation of them. *Id.* The statute's focus

is on the intended effect on the minor rather than a defendant's intent to engage in actual sexual

activity. *Id.*  Here, once VAN HORN knowingly sought and obtained the assent of the purported

adult "Brian" to engage in sexual activity with his ten-year-old daughter, his offense would be complete if he took a "substantial step" after obtaining that assent. The law in the Seventh Circuit is that "making arrangements for meeting the girl, as by agreeing on a time and place for the meeting surely" constitutes a substantial step. *Id.* at 250, citing *United States v. Gladish,* 536 F.3d 646, 649 (7th Cir. 2008). Here, VAN HORN attempted to induce and encourage "Brian" to allow him to engage in sexual activity with his minor daughter at many junctures during his communications with him.

Presumably, encouragement/enticement statutes such as those charged in Count 1 of VAN HORN's indictment make criminal the mere act of procuring the agreement of a minor, rather than the completed act of sex with a minor, because Congress does not want an adult to be able to obtain the agreement of a minor to have sexual relations and then leave it up to the adult as to whether the sex act occurs or not. The encouragement/enticement laws also criminalize grooming-type activities according to *Berg* and it is certainly rational for Congress to prohibit that activity before it progresses to completed sexual abuse. Furthermore, there are separate Federal laws that criminalize one who acts upon an actual intent to engage in sexual activity with a minor or attempts to do so. *See, e.g.,* 18 U.S.C. § 2423. Hence it is VAN HORN's act of procuring the agreement of Brian to allow him to engage in sexual activity with the purported minor, (along with taking a substantial step toward acquiring the agreement) that is the criminal act in this case.

In light of the foregoing caselaw regarding the intent required to establish a violation of encouragement/enticement statutes, the government will propose a jury instruction that substantially states as follows:

> In proving the requirement that the defendant knowingly attempted to entice, induce, persuade or encourage an individual to engage in sexual activity, the government must prove beyond a reasonable doubt that the defendant intended to persuade, induce, entice or encourage a person he believed to be a minor to agree to engage in sexual activity, as that term is defined in these instructions. The government is not required to prove that the

defendant actually intended to engage in sexual activity with that
person.

This instruction is consistent with existing caselaw and also honors the admonition in the Committee notes to the 7th Cir. Criminal Pattern Jury Instructions that "the trial judge should give instructions that define the precise mental state required by the particular offense charged." *See* 7th Cir. Crim. Instruction 4.12 at *Committee Comment.*

Similarly, in proving the requirement that VAN HORN took a substantial step toward committing the offense of enticement of a minor with the intent to commit the offense, the government must only prove that VAN HORN took a substantial step *toward causing assent or agreement,* not toward causing actual sexual contact. *Lee*, 603 F.3d at 914; *Goetzke*, 494 F.3d at 1236 (9th Cir. 2007); *See also  Berg*, 640 F.3d at 246, 251-253. ("Because Berg was charged with a § 2422(b) attempt, the government's burden was to prove beyond a reasonable doubt that he intended to persuade, induce, or entice someone whom he believed was a minor to engage in sexual activity—not that he intended to engage in sexual activity").

Furthermore, a purported minor's consent is not a defense to the offenses charged in VAN HORN's indictment. In fact, it is the very act of obtaining that assent or agreement that is the essence of the charged offenses. *Berg*, 640 F.3d at 246, 251-253.  A purported minor's willingness to engage in sexual activity is irrelevant because, by law, any minor is legally unable to consent to sexual activity. *See United States v. Dhingra*, 371 F.3d 557, 567 (9th Cir. 2004) ) ("The victim's willingness to  engage in sexual activity is irrelevant, in much the same way that a minor's consent to  sexual activity does not mitigate the offense of statutory rape or child molestation."); *see  also United States v. Brooks*, 610 F.3d 1186, 1199 (9th  Cir. 2010); *United States v. Douglas*,  415 F. App'x 271, 274 (2d Cir. 2011) ("The inquiry therefore is whether Douglas  attempted to gain the consent or willingness of a minor to engage in criminal sexual  activity, not whether he attempted to have sex with a minor."); *United States v. Dye*, 2010  WL 4146187, *3 n.3 (3d Cir. 2010) ("Dye's

'hot to trot' defense is especially troubling  because its underlying premise is that it is possible for a 14-year-old child to seduce a 36-year-old man, absolving the man of criminal liability for engaging in, or attempting  to talk the minor into engaging in, illicit sexual activity. Dye cites no case law, however,  to support the notion that minors-who are, by law, unable to even consent to sexual  activity, can 'ask for it' in such a way that it becomes legally permissible for adults to entice minors into sexual escapades.') (citing *United States v. Remoi*, 404 F.3d 789, 795 (3d  Cir. 2005)).

The government intends to submit proposed instructions to the Court, asking it to apprise the jury of the above legal principles supporting its case-theory. The government notes that the Seventh Circuit Pattern Jury Instructions do not provide any meaningful guidance regarding the several different factual and legal permutations that arise in enticement/ encouragement cases.  In fact, the pattern instructions for the offenses at 18 U.S.C. §2422(b) and 2425 contain only an instruction regarding the elements for those offenses and nothing else.  *See* 7th Circuit Criminal Pattern Jury Instructions at 870-71 and 878-79.    The Committee Comments to the elements instruction for 2422(b) offenses recognize the existence of the *Berg* opinion and its definition of the intent required to prove the offense. The Comments also recognize elsewhere that further instructions beyond the bare elements instruction will often be necessary. *Id.* It is well-settled in the 7th Circuit that trial courts have wide discretion to fashion non-pattern instructions that "fairly and accurately" summarize the law. *See United States v. Lawrence*, 788 F.3d 234, 245 (7th Cir. 2015); *See also Cote*, 504 F.3d at 687 ("We give the district court substantial discretion with respect to the precise wording of jury instructions so long as the final result, read as a whole, completely and correctly states the law"); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). A party is also entitled to instructions that support their case-theory if: (1) the instruction provides a correct statement of the law; (2) the theory is supported by the evidence;  and (3) the failure to include the instruction would deprive the party of a fair trial. *Id.* Accordingly, the government anticipates submitting instructions that define and explain the legal principles that are consistent with its theory

11

of the case.

## 2.   The Entrapment Defense in Enticement/Encouragement Cases

An affirmative defense that defendants often try to raise in cases arising from undercover enticement/encouragement "sting" operations is entrapment.  The government at this point has no idea whether VAN HORN is planning to advance this affirmative defense.  If he does plan to advance it, the government opposes it and asks the Court to construe this section of this memorandum as a motion in limine to preclude VAN HORN from raising the entrapment defense.  The government believes that VAN HORN cannot assert the entrapment defense because he cannot legally establish sufficient government inducement of the offense.

For many years, the law of entrapment in the Seventh Circuit, by the Court's own admission, was a confusing muddle of conflicting cases and doctrines. *United States v. Mayfield*, 771 F.3d 417, 424 (7th Cir. 2014). The en banc *Mayfield* court attempted to resolve the Court's "conflicting signals about the substance of the defense, the procedure for raising and presenting it, and the quantum of evidence necessary to get the issue before the jury." *Id.*  The *Mayfield* court reiterated the long-standing entrapment law doctrine that a defendant claiming entrapment must first proffer evidence in support of ***both*** elements of entrapment: (1) government inducement of the crime; and (2) lack of predisposition on the part of the defendant to engage in criminal conduct. *Id.* at 440.

The Court also endeavored to provide "clarity and consistency" to the definition of inducement. *Id.* at 434–35. It held that inducement means more than mere government solicitation of the crime. *Id.* The Court held that the "fact that government agents initiated contact with the defendant, suggested the crime, or furnished the ordinary opportunity to commit it is insufficient to show inducement. *Id.*  Instead, inducement means government solicitation of the crime ***plus*** some other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts.

*Id.* The "other conduct" may be repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person who otherwise would not commit the crime, if left alone, will do so in response to the government's efforts. *Id.* In other words, if an ordinary, law-abiding citizen could have resisted the government's efforts, the inducement prong fails and a defendant cannot pursue the defense. *Id.* at 434-435.

With regard to the predisposition element, the *Mayfield* court concluded that  a defendant is predisposed to commit the charged crime if he was ready and willing to do so and likely would have committed it without the government's intervention, or actively wanted to but hadn't yet found the means. *Id.  at* 438. The defendant's predisposition is measured at the time the government first proposed the crime, but the nature and degree of the government's inducement and the defendant's responses to it are relevant to the determination of predisposition. *Id.* A prior conviction for a similar offense is relevant but not conclusive evidence of predisposition; a defendant with a criminal record can still be entrapped. *Id.*

Because entrapment is a fact question on which the government bears the burden of proof, a defendant is entitled to a jury instruction on the defense "whenever there is sufficient evidence from which a reasonable jury could find entrapment." *Id.*  at 440. The *Mayfield* court reaffirmed prior Seventh Circuit law and held that to obtain a jury instruction and shift the burden of disproving entrapment to the government, a defendant must proffer evidence on both elements of the defense. *Id.*  An entrapment instruction is warranted if the defendant proffers "some evidence" that the government induced him to commit the crime and he was not predisposed to commit it.  *Id.*  The Court further explained that "[a]lthough more than a scintilla of evidence of entrapment is needed before instruction on the defense becomes necessary, a defendant need only point to evidence in the record that would allow a rational jury to conclude that he was entrapped." *Id.*

13

As a general rule, entrapment is usually a question for the jury, not the court. *Id.* at 439. The Court recognized, however, that the entrapment question is sometimes amenable to pre-trial resolution on a party's motion, particularly where the government raises a sufficient challenge to the inducement prong of the entrapment inquiry. *Id.* at 441[4]. Consequently, if the government can show it did nothing more than solicit the crime on standard terms, then the trial court should deem the entrapment defense unavailable as a matter of law. *Id.*

Here, VAN HORN cannot offer any evidence that the government induced him to commit the offense of enticement/encouragement because he robustly engaged in ongoing efforts to obtain Brian's assent to engage in sexual activities with his ten-year-old daughter. The entirety of the government's pre-arrest encounter with VAN HORN is reflected in Attachment A. Importantly, VAN HORN initiated the conversation with the UCE after seeing the posting for "In[ee$$$T." A review of that encounter reveals that the government agent posed as an adult male who was offering to "share" his ten-year-old daughter for a sexual encounter with VAN HORN. An ordinary, law-abiding citizen could have easily resisted the government's efforts. Even if the Court is willing to accept the proposition that the government agent solicited the crime in this case, there is none of the "*plus*" that the *Mayfield* court identified as a necessary predicate for a defendant to sustain the inducement prong of entrapment as a matter of law. *See Mayfield* 771 F.3d at 434-435. Here there is no other government conduct that creates a risk that a person who would not commit the crime if left to his own devices will do so in response to the government's efforts. *Id.* There are no repeated attempts at persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward beyond that inherent in the customary execution of the crime, pleas based on need, sympathy, or friendship, or any other conduct by government agents that creates a risk that a person

---

[4] The *Mayfield* court recognized that the predisposition prong rarely will be susceptible to resolution as a matter of law because the predisposition question is "quintessentially factual" and it is hard to imagine how a particular person could be deemed "likely" to do something as a matter of law. *Id.* The *Mayfield* Court found the inducement inquiry, on the other hand, more appropriate for pretrial resolution. *Id.*

who otherwise would not commit the crime if left alone will do so in response to the government's

efforts. *Id.*  Accordingly, the inducement prong of any potential entrapment defense in this case

fails and entrapment is not a defense that is legally available to VAN HORN.


Respectfully submitted,

STEVEN D. WEINHOEFT
United States Attorney


KARELIA S. RAJAGOPAL
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
Phone:  (618) 628-3700
Email: Karelia.Rajagopal@usdoj.gov